*Darrah v. State*, No. 644-12-19 Wncv (Tomasi, J., July 22, 2020).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 644-12-19 Wncv |

| | |
|---|---|
| Andrew Darrah,<br>  Appellant,<br><br>  v.<br><br>State of Vermont, Agency of<br>Transportation,<br>  Appellee. | |

Opinion and Order on Appeal

Appellant Andrew Darrah seeks Rule 74 review of a decision of a Vermont Agency of Transportation ("VTrans" or "the State") hearing examiner affirming the Department of Motor Vehicles' ("DMV's") re-imposition of the lifetime revocation of Mr. Darrah's driver's license pursuant to 23 V.S.A. § 1209a(b) (the "TAP"). The hearing officer determined that Mr. Darrah had not remained totally abstinent from the consumption of alcohol and had driven with alcohol in his system. On appeal, Mr. Darrah argues that he was not required under the program to be totally abstinent but was barred from driving under the influence of alcohol, that the hearing officer relied on inadmissible evidence, and that the admissible evidence does not support the finding of a violation. The Court makes the following determinations.

Facts

The facts surrounding Mr. Darrah's entry in the TAP are not in serious dispute. Mr. Darrah's license was revoked for life in April 2000 following multiple convictions for driving under the influence. In 2003, he applied for the reinstatement of his license pursuant to the TAP. 23 V.S.A. § 1209a. Following an investigation and an evidentiary hearing, a VTrans hearing examiner found and concluded that Mr. Darrah met the statutory qualifications and was entitled to reinstatement under the TAP. *See* August 29, 2003 VTrans Ruling. The hearing examiner concluded his ruling by stating: "Moreover, Petitioner was advised that the revocation will be put back into effect in the event any further investigation reveals a return to the consumption of alcohol or drugs." *Id.*

Mr. Darrah did not appeal or otherwise challenge the final provision of the ruling.

In March 2019, the DMV notified Mr. Darrah that it was revoking his license based on an investigation that showed he had violated the terms of the TAP. Mr. Darrah requested an administrative hearing. At the hearing, the hearing officer accepted documentary evidence and testimony from a DMV investigator. The investigator testified concerning his review of the Vermont law enforcement database. Those records showed that Mr. Darrah had two encounters with the Vermont State Police that involved alcohol. In March 2015, a trooper drove Mr. Darrah home from a bar because he was intoxicated. In May 2015, a trooper stopped Mr. Darrah as he was driving a motorcycle. A preliminary breath test

2

showed that he had a blood alcohol level of .073.  The officer issued a civil violation to Mr. Darrah for violating a condition on his license that required that he not operate with any alcohol in his system.

The investigator also spoke with Mr. Darrah about the incidents.  He denied drinking and driving in both incidents.  His response regarding the first event indicated that he remembered it.  His response concerning the second event was that he admitted that he had consumed "a couple of beers" that day.

The hearing officer – interestingly, the same hearing officer that had imposed Mr. Darrah's reinstatement conditions in 2003 -- determined that Mr. Darrah had violated both the condition that he not consume any alcohol and a condition that he not drive with a blood alcohol content of over .02 percent.

Mr. Darrah timely appealed that decision to this Court.  23 V.S.A. § 105(b).

Standard of Review

The Vermont Supreme Court has described the applicable standard of review as follows:  "Courts presume that the actions of administrative agencies are correct, valid and reasonable, absent a clear and convincing showing to the contrary. . . . [J]udicial review of agency findings is ordinarily limited to whether, on the record developed before the agency, there is any reasonable basis for the finding."  *State Dep't of Taxes v. Tri-State Ind. Laundries*, 138 Vt. 292, 294 (1980).  "[C]ourts 'employ a deferential standard of review' of an agency's interpretation and application of its own regulations."  *In re Soon Kwon*, 2011 VT 26, ¶ 6, 189 Vt. 598, 599 (quoting *Conservation Law Found. v. Burke*, 162 Vt. 115, 121 (1993)).  Review of

3

the agency's conclusions of law, however, is *de novo*. *In re Soon Kwon*, 2011 VT 26, ¶ 7.

Analysis

Though the issue was disputed at the VTrans hearing, for purposes of resolving the present dispute, the State is willing to agree that the 2003 version of the TAP law applies to Mr. Darrah's revocation. As it existed in 2003, Section 1209a(b) of the TAP provided:

> (b) **Abstinence.** Notwithstanding any other provision of this subchapter, a person whose license has been suspended for three years or more under this subchapter may apply to the driver rehabilitation school director and to the commissioner for reinstatement of his or her driving privilege. In the case of a suspension for three years, the person shall have completed two years of total abstinence from consumption of alcohol or drugs, or both. In the case of a suspension for life, the person shall have completed three years of total abstinence from consumption of alcohol or drugs, or both. In both cases, the beginning date for the period of abstinence shall be no sooner than the effective date of the suspension from which the person is requesting reinstatement and shall not include any period during which the person is serving a sentence of incarceration to include furlough. If the commissioner, or a medical review board convened by the commissioner, is satisfied by a preponderance of the evidence that the applicant has abstained for the required number of years immediately preceding the application and hearing, has successfully completed a therapy program as required under this section and the person appreciates that he or she cannot drink any amount of alcohol and drive safely, the person's license shall be reinstated immediately upon such conditions as the commissioner may impose. If after notice and hearing the commissioner later finds that the person was operating, attempting to operate or in actual physical control of a vehicle while the person's alcohol concentration was 0.02 or more following reinstatement under this subsection, the person's operating license or privilege to operate shall be immediately suspended for the period of

4

the original suspension.[1]  A person shall be eligible for reinstatement under this section only once following a suspension for life.

The parties do, however, disagree as to the meaning of this provision. Mr. Darrah reads the law as limiting the grounds for revocation to a circumstance where he was found to have been driving with a blood-alcohol content of over .02 percent.  The State counters that the TAP also allowed the Commissioner of DMV to set other "conditions" on reinstatement and that Mr. Darrah's reinstatement contained an additional demand of total abstinence.  The Court agrees with the State.

I.      Mr. Darrah's Reinstatement Was Conditioned On His Not Consuming Alcohol

In the Court's view, resolution of this case is guided by the determinations made in *State v. Prevost*, No. 179-4-19 Wncv, December 26, 2019.  (A copy of that Opinion and Order is attached to this ruling and its rationale incorporated by reference herein.  The Supreme Court's recent 3-Justice affirmance of that ruling is also appended.)  In that decision, the Court determined that the statute in effect at

---

[1] The hearing officer and the parties agree that the excerpted language was the law in effect at the time of Mr. Darrah's reinstatement in 2003.  The Court's examination of the legislative record, however, indicates that the above wording was not added until May 2004 and became effective that July 1.  Prior to that, the text of the law stated:  "If after notice and hearing the commissioner later finds that the person was operating, attempting to operate or in actual physical control of a vehicle *while there was any amount of alcohol in the blood* following reinstatement under this subsection, the person's operating license or privilege to operate shall be immediately suspended for the period of the original suspension."  (Emphasis added.)  The Court's determinations would be the same under either version of Section 1209a(b).  Given that conclusion, it is unnecessary for the Court to resolve the confusion.

the time Mr. Prevost entered the TAP (in relevant part, the same law at issue here) stated that a participant would be suspended again if they were found to have driven with blood alcohol level of .02 percent or more. The statute also provided, however, that the Commissioner could impose additional conditions on reinstatement. The law stated that reinstatement under the TAP would be "*upon such conditions as the commissioner may impose*." 23 V.S.A. § 1209a(b) (2005) (emphasis added). In Mr. Prevost's case, the Commissioner imposed a "condition" that his "revocation will be put back in into effect in the event any further investigation reveals a return to the consumption of alcohol or drugs."

In *Prevost*, the Court determined that Mr. Prevost could not collaterally challenge that latter condition during a later revocation proceeding. Instead, if Mr. Prevost had believed that condition was improper, his remedy was to seek reconsideration of the ruling or appeal it when it was issued. He did neither. As a result, that condition was *res judicata*. The same reasoning applies here.

Though not using the word "condition," Mr. Darrah's reinstatement contains a nearly identical provision plainly stating that he was advised by the hearing officer orally and in the written decision "that the revocation will be put back into effect in the event any further investigation reveals a return to the consumption of alcohol or drugs." For all the reasons set out in *Prevost*, the Court concludes that, in 2003, the TAP allowed the Commissioner to set additional reinstatement conditions, that the Commissioner imposed a no-alcohol condition on Mr. Darrah's

6

reinstatement, and that he may not challenge that aspect of the reinstatement decision at this juncture.

## II.    The Evidence Supports the DMV Determination

Mr. Darrah next argues that the hearing officer inappropriately relied on hearsay evidence and that there was insufficient admissible evidence of a violation. First, the Court agrees with the State that the Vermont Rules of Evidence do not apply to this type of DMV hearing.  3 V.S.A. § 816(b); *see In re Smith*, 169 Vt. 162, 173 (1989).  As a result, Mr. Darrah's rule-based objections do not provide a basis for overturning the decision below.

Second, even if the Rules of Evidence applied strictly, the TAP violation in this instance can be established solely through proof of the consumption of alcohol. Mr. Darrah admitted during his discussions with the investigator that he had consumed alcohol on, at least, one of the two occasions involving the VSP Trooper. These party admissions would be sufficient to sustain the determination made below.  Vt. R. Evid. 801(d)(2).

## Conclusion

For the foregoing reasons, the decision of the hearing examiner is affirmed.

Dated this __ day of July, 2020, at Montpelier, Vermont.

_____
Timothy B. Tomasi
Superior Court Judge

7